UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOHN STAHL,

                 Plaintiff,

              v.

UNITED STATES OF AMERICA,

                 Defendant.

No. CV-08-170-FVS

ORDER RE CROSS MOTIONS
FOR SUMMARY JUDGMENT

   **THIS MATTER** comes before the Court based upon cross motions for summary judgment. The plaintiff is represented by Gary C. Randall, James J. Workland, and Eric J. Sachtjen. The defendant is represented by Jennifer D. Auchterlonie and W. Carl Hankla.[1]

**A.**

   John Stahl belongs to a religious corporation whose members live communally and hold their property in common. The corporation is not required to pay federal income tax. 26 U.S.C. § 501(d) (establishing an exemption for "[r]eligious . . . corporations . . . [that] . . . have a common treasury"). Instead, the corporation's members pay tax on its income. Members may reduce their tax liability by invoking deductions the corporation is entitled to take ("corporate-level" deductions). In addition, members may reduce their tax liability by

---

   [1]The Court has determined oral argument will not be helpful. Local Rule 7.1(h)(3).

ORDER - 1

1    invoking deductions they, as individuals, are entitled to take

2    ("individual-level" deductions).  Mr. Stahl argues the religious

3    corporation to which he belongs may deduct from its gross income the

4    value of food and medical care it provided to him during tax years

5    1997, 1998, and 1999.  Not only that, but also he argues he may deduct

6    from his gross income the value of meals he receives on the

7    corporation's premises for the corporation's convenience during those

8    same years.

9                                  **B.**

10       John Stahl paid his federal income taxes for tax years 1997,

11   1998, and 1999.  Thereafter, he submitted timely claims for refund

12   with the Internal Revenue Service ("IRS").  The IRS denied his claims.

13   Consequently, he filed an action against the United States.  He

14   alleges he overpaid his income taxes for the years in question, and

15   the IRS has improperly refused to refund his overpayments.  He seeks

16   judgment against the United States in the amount of his alleged

17   overpayments, together with interest, attorney's fees, and costs.  The

18   Court has jurisdiction over the subject matter of his action.  28

19   U.S.C. § 1346(a)(1); 26 U.S.C. § 7422.

20       Mr. Stahl is a founding member of the Stahl Hutterian Brethren

21   ("SHB").  The latter is nonprofit corporation that was organized in

22   order to enable its members to live in accordance with the tenets of

23   the Hutterite tradition.  Hutterites are a branch of the Anabaptist

24   movement, which began in 16th century Europe.  They live in colonies;

25   emphasizing communal life.  The SHB is like an extended family.  Its

26   core is composed of eight brothers, two sisters and their respective

ORDER - 2

spouses.  Those ten couples have produced children.  As a result, the colony now numbers about 65 men, women, and children.

Like other Hutterite colonies, the SHB recognizes the spiritual authority of the elders of the Hutterian church.  Nevertheless, the SHB is an independent corporation that exists under the laws of the State of Washington.  Active members of the SHB elect the corporation's directors who, in turn, elect and supervise its officers.  Mr. Stahl is the SHB's current president.  He is accountable to the active members of the SHB for the colony's spiritual and material well being.

A person transfers his property to the SHB when he becomes a member.  Members hold their property in common through the SHB as long as they are members.  However, a member may sever his relationship with the SHB, or his fellow members may expel him.  Should either contingency occur, the person forfeits his interest in the SHB's property.  In the event he leaves the community, he takes the clothing he's wearing, and that's about it.

The SHB's approach to property is illustrated, in part, by its policy regarding credit cards.  Individual members are not allowed to maintain separate accounts with credit card companies.  However, the SHB has a corporate account.  The president has issued copies of the SHB card to approximately 20 members.  A member may use the SHB credit card to purchase an item in a store, but he must obtain the president's approval before doing so.  For the most part, members use the SHB credit card when they are traveling.

The SHB farms approximately 30,000 acres of land.  The SHB has

ORDER - 3

1    appointed eight managers to oversee the various parts of the

2    operation.  Each member works to the extent he's able; typically, at a

3    job that interests him.  Children perform age-appropriate tasks.

4    Members are expected to be self-motivated.  Each works until he's

5    completed his responsibilities for that day.  When a member becomes

6    sick, he stays home.  He doesn't need to ask anyone's permission to

7    miss work; although, if he has pressing responsibilities, he would

8    notify his manager so the work is performed.

9        The SHB hires nonmembers to perform a limited number of jobs

10   within the colony.  Some of the jobs that are performed by nonmembers

11   are short-term jobs.  For example, the SHB pays an employment agency

12   to provide seasonal workers.  By contrast, some of the jobs that are

13   performed by nonmembers are long-term jobs.  For example, the SHB

14   hires four nonmember school teachers to help educate its families'

15   children.  Not only does the SHB pay wages to its long-term, nonmember

16   employees, but also the SHB makes contributions to government-mandated

17   benefit programs such as the State of Washington's Industrial

18   Insurance Act.

19       The SHB does not pay wages to its members; but it does take care

20   of their needs.  By way of illustration only, the SHB provides each

21   family with a residence in the colony.  The residences are like

22   "condos."  Furthermore, the SHB feeds its members.  They typically

23   share meals together in the colony's dining hall.  Finally, the SHB

24   pays for the medical care its members need.  It is medical care and

25   meals that lie at the heart of this action.  SHB president John Stahl

26   and the IRS disagree with respect to whether the value of those items

ORDER - 4

is deductible.  Their disagreement has its genesis in 26 U.S.C. §

501(d).

Section 501(d) creates an exemption from federal income tax for

"[r]eligious . . . corporations . . . [that] . . . have a common

treasury[.]"  The reason for the exemption is this:

> Without § 501(d), the income of a religious corporation such
> as the [SHB] would be subject to the regular corporate
> income tax at the corporate level, and, if distributed to
> organization members, the individual income tax at the
> shareholder level.  If the corporate income were not
> distributed, the corporation would pay both the corporate
> income tax and the accumulated earnings tax.

*Kleinsasser v. United States*, 707 F.2d 1024, 1025-26 (9th Cir.1983).

Congress decided it was unfair to require both a § 501(d) corporation

and its members to pay federal income taxes.  *Id.* at 1026.

Consequently, Congress eliminated the corporate level of taxation and

left "a single tier of individual income taxation.  *Id.*

An individual member's federal income tax liability is determined

by application of partnership accounting principles.  *Kleinsasser*, 707

F.2d at 1026.  The § 501(d) corporation files a partnership tax

return.  *Id.* at 1025 (citing Treas. Reg. (26 C.F.R.) § 1.6033-2(e)).

"The partnership tax return allows the Internal Revenue Service to

determine how much income must be reported by organization members."

*Id.* at 1026.  Each member files an individual tax return in which he

declares his pro rata share of the corporation's income as his

personal gross income.  26 U.S.C. § 501(d).  For tax purposes, each

member's share is treated as though it were a dividend received.  *Id.*

Individual members "pay income tax on their pro rata shares of

ORDER - 5

1  organization income." *Kleinsasser*, 707 F.2d at 1025.

2      Given the structure of § 501(d), Mr. Stahl must calculate the

3  SHB's taxable income before he can determine the amount of federal

4  income tax he must pay.  Corporate deductions play an important role

5  in the process.   A corporate deduction reduces the SHB's taxable

6  income.  This means the SHB reports less income on its tax return.

7  The benefit to Mr. Stahl is obvious.  His personal gross income is his

8  pro rata share of the SHB's taxable income.  As the SHB's annual

9  taxable income goes down, so does his individual gross income.  Once

10  he has calculated his gross income, he can begin looking for

11  deductions to which he, as an individual, is entitled.

12      Mr. Stahl seeks to invoke two deductions:  one at the corporate

13  level; the other at the individual member level.  At the corporate

14  level, the issue is whether the SHB may deduct, as business expenses,

15  the value of meals and medical care it furnished to Mr. Stahl during

16  tax years 1997, 1998, and 1999.  26 U.S.C. § 162(a) ("[t]here shall be

17  allowed as a deduction all the ordinary and necessary expenses paid or

18  incurred during the taxable year in carrying on any trade or

19  business").  At the individual level, the issue is whether Mr. Stahl

20  may deduct from his gross income the value of meals he received from

21  the SHB on its premises for its convenience during tax years 1997,

22  1998, and 1999.  26 U.S.C. § 119(a) ("[t]here shall be excluded from

23  gross income of an employee the value of any meals . . . furnished to

24  him . . by . . . his employer for the convenience of the employer, but

25  only if . . . the meals are furnished on the business premises of the

26  employer").  Mr. Stahl bears the burden of proving he is correct with

ORDER - 6

respect to both deductions.  *See Smith v. Comm'r of Internal Revenue*, 300 F.3d 1023, 1029 (9th Cir.2002) ("'In general, an income tax deduction is a matter of legislative grace and . . . the burden of clearly showing the right to the claimed deduction is on the taxpayer.'"  ((alterations in the original) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607 (1943))).  The IRS argues Mr. Stahl cannot satisfy his burden of proof.

The parties have filed cross motions for summary judgment. "[J]udgment . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In order for Mr. Stahl to defeat the United States' motion for summary judgment, he must present evidence from which a rational fact-finder could conclude the SHB is entitled to the corporate deduction (§ 162(a)) and he's entitled to the individual deduction (§ 119(a)).  *See Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies*, Inc., 210 F.3d 1099, 1103 (9th Cir.2000).  In order for Mr. Stahl to prevail upon his motion for summary judgment, he must demonstrate a rational fact-finder would be compelled to accept his position with respect to one or both of the deductions at issue here.  *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.2007).

## C.

Mr. Stahl contends he may deduct from his gross income the value of meals he receives on the SHB's premises for the SHB's convenience.

ORDER - 7

26 U.S.C. § 119(a).  "The value of meals furnished to an employee by his employer shall be excluded from the employee's gross income if two tests are met:  (i) The meals are furnished on the business premises of the employer, and (ii) the meals are furnished for the convenience of the employer."  Treas. Reg. (26 C.F.R.) § 1.119-1(a).  The IRS objects to Mr. Stahl's effort to invoke § 119(a).  In its opinion, Mr. Stahl is not an employee of the SHB.  If the IRS is correct, he is not entitled to take the deduction.

The first step is to identify the test for determining when a member of a § 501(d) corporation is also an employee of the corporation.  The Ninth Circuit has not addressed that specific issue. Nor has any other circuit court of appeals.  Some guidance may be drawn from *Israelite House of David v. United States*, 58 F. Supp. 862 (W.D. Mich. 1945).  There, a district court applied a "right to control test" in a case that is similar to this one in important respects.  *Id.* at 862.  The Ninth Circuit has used much the same test in tax cases, although none involved § 501(d).  *See, e.g., Professional & Executive Leasing v. Commissioner*, 862 F.2d 751, 753 (9th Cir.1988); *General Investment Corp. v. United States*, 823 F.2d 337, 341 (9th Cir.1987).  In *General Investment Corp.*, the Ninth Circuit observed the basic test is whether the employer has the right to control the manner in which work is performed.  823 F.2d at 341. However, the Ninth Circuit listed other factors that profitably may be considered:

> (1) whether the business has the right to discharge the worker; (2) whether the business furnishes tools to the person rendering the service; (3) whether the business

ORDER - 8

provides the worker with a place to work; and (4) whether the work is performed in the course of the individual's business rather than in some ancillary capacity.

*Id.* at 342 (citations omitted).  The list in *Professional & Executive Leasing* is virtually the same.  The only factor it adds is whether the purported employer withholds "taxes, workmen's compensation and unemployment insurance funds[.]"  *Professional & Executive Leasing*, 862 F.3d at 753.

Viewed from a distance, the relationship between the SHB and its members resembles that of employer and employee.  The SHB has the authority to determine which job a member will perform and how he will perform it.  The SHB provides its members with places to work and the tools they need to perform their jobs; and the relationship between the SHB and its members is a permanent relationship, although the members have the authority to expel a wayward brother or sister.  Thus, Mr. Stahl can argue plausibly he is an employee of the SHB.  However, upon closer examination, it is clear his relationship to the SHB is very different from the typical employee/employer relationship.

An employer hires an employee to perform some job that will benefit the employer.  The employee's value lies principally in what he can do for his employer.  An employee can be replaced when it suits his employer's interests.  Not so a member of the SHB.  He is part of a body of believers.  No member of the SHB has the authority to say to another member, "I don't need you anymore.  Be gone."  Such statements are unthinkable.  Rather, the members of the SHB are distinguished by their devotion to one another.

At the same time, the SHB is a disciplined body.  Members elect

ORDER - 9

1  leaders and agree to submit to their leaders' authority, much of which

2  is vested in the office of the president.  For example, he may correct

3  a member who is failing to perform his job.  In theory, the president

4  could remove the delinquent member from his job and ask him to perform

5  some other job.  However, the SHB would not expel a delinquent member

6  from the colony because he performed a job incompetently.  Only the

7  member who breaks faith with his fellow members will be expelled.

8      The faith-based nature of the relationship between the SHB and

9  its members is further reflected by the absence of wages.  Employees

10  work to earn wages, and the wages they receive are their own property.

11  The members of the SHB work, and they work hard, but they neither

12  expect to receive, nor do they receive, wages for their efforts.

13  Instead, they hold all property in common and use it to provide for

14  each other's needs.  Unlike employees, they are not rewarded based

15  upon skill, or productivity, or rank.  To the contrary, each receives

16  according to his needs.  These are met by the colony.  The SHB does

17  not look to the government for support for its members.  As a matter

18  of religious principle, Hutterites refuse to participate in either the

19  Social Security system or any other government-benefit program.

20      If any doubt remains regarding Mr. Stahl's status, it is removed

21  by comparing it to the status of the nonmembers who work at the

22  colony.  They bear all the characteristics of true employees.  The SHB

23  hires each one to perform a specific task.  It controls the manner in

24  which he performs the task.  It pays him wages for the work he

25  performs, and it makes contributions on his behalf to government-

26  mandated benefit programs.  His relationship with the SHB lasts only

ORDER - 10

1  as long the SHB needs his services and he performs his job to the

2  satisfaction of the SHB.

3      In conclusion, the SHB knows how to hire employees when it needs

4  them.  Mr. Stahl's relationship to the SHB is substantially different

5  from that of its nonmember employees.  His relationship is based upon

6  shared religious commitments, not upon job performance.  Thus, were he

7  totally disabled in an accident, his relationship with the SHB would

8  continue indefinitely despite his inability to contribute materially

9  to the life of the SHB.  He would not seek assistance from the

10 government, but would be supported by his fellow members.  In view of

11 the preceding circumstances, a rational fact-finder would be unable to

12 determine Mr. Stahl is an employee of the SHB.  This means he, as an

13 individual member of the SHB, may not deduct from his gross income the

14 value of meals he received on the SHB's premises for the SHB's

15 convenience during tax years 1997, 1998, and 1999.  The United States

16 is entitled to summary judgment with respect to Mr. Stahl's claim for

17 a deduction under 26 U.S.C. § 119(a).

18                              **D.**

19     Mr. Stahl contends the SHB may deduct from its gross income the

20 value of medical care and food it provided to him during tax years

21 1997, 1998, and 1999.  The IRS disagrees.  In its opinion, he is

22 seeking a deduction for personal, living, or family expenses.  The IRS

23 argues such expenses are not deductible.  26 U.S.C. § 262(a) ("Except

24 as otherwise expressly provided in this chapter, no deduction shall be

25 allowed for personal, living, or family expenses.").

26     The parties' dispute over the deductibility of medical care may

ORDER - 11

1  be resolved quickly.  Mr. Stahl acknowledges the SHB is entitled to

2  the deduction only if he is its employee.  *Waterfall Farms, Inc. v.*

3  *Comm'r*, 86 T.C. 648, 2003 WL 22838540, at *7 (2003) ("When payments

4  for medical care are properly excludable from an employee's income

5  because they are made under a 'plan for employees,' they are

6  deductible by the employer as ordinary and necessary business expenses

7  under section 162(a)."  (quoting Treas. Reg. (26 C.F.R.) § 1.162-

8  10(a))).  As explained above, Mr. Stahl is not an employee of the SHB.

9  Thus, the corporation may not deduct the cost of his medical care

10 under § 162(a).

11     The parties' dispute over the existence of a § 162(a) deduction

12 for the cost of food is more difficult to resolve.  Mr. Stahl relies

13 upon *Harrison v. Commissioner*, 41 T.C. 1384 (1981).  There, a judge

14 allowed a company to deduct, as a business expense, the cost of food

15 it provided to seasonal employees.  The judge found that the company

16 needed to furnish meals to seasonal employees in order to induce them

17 to work on the company's farm.  *Id.*  He decided that the company's

18 expenditures for employee meals were "'appropriate and helpful'" to

19 the operation of the farm.  *Id.* (quoting *Welch v. Helvering*, 290 U.S.

20 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933)).  Consequently, he ruled

21 that the company was entitled to deduct the cost of groceries as a

22 business expense.  *Id.*

23     This case is distinguishable from *Harrison*.  In this case (unlike

24 *Harrison*), the issue is whether a § 501(d) corporation may deduct the

25 cost of meals it provides to a member who is not one of its employees.

26 *Harrison* does not address that issue.  As a result, *Harrison* does not

ORDER - 12

1    help Mr. Stahl.  He must seek some other rationale for the § 162(a)

2    deduction he is attempting to invoke.

3        Mr. Stahl attempts to bolster his position by drawing upon the

4    concept of "unrelated business taxable income.[2]"  That he should rely

5    upon the concept is surprising; for it is associated with

6    organizations which are exempt from income tax pursuant to 26 U.S.C. §

7    501(c)(3).  A § 501(c)(3) organization "must pay tax on income that it

8    earns by carrying on a business not 'substantially related' to the

9    purposes for which the organization has received its exemption from

10   federal taxation."  *United States v. American College of Physicians*,

11   475 U.S. 834, 835, 106 S.Ct. 1591, 89 L.Ed.2d 841 (1986).  The

12   preceding case is instructive.  The American College of Physicians

13   ("ACP") publishes a journal named "The Annals of Internal Medicine."

14   475 U.S. at 836, 106 S.Ct. 1591.  At one time, the ACP sold

15   advertising space in the journal.  The advertisements typically

16   involved "pharmaceuticals, medical supplies, and equipment useful in

17   the practice of internal medicine, as well as notices of positions

18   available in that field."  *Id.*  The advertisements generated income

19   for the ACP.  *Id.*  It paid tax on the net income and filed a claim for

20   a refund, which the IRS denied.  The ACP filed an action in the United

21   States Claims Court.  *Id.* at 837, 106 S.Ct. 1591.  The latter rejected

22   the ACP's request for a refund because it found the ACP's editorial

23   policy concerning advertising was driven by financial considerations

24   _____

25       [2]He has submitted a copy of a private letter ruling that
     applied the concept to the agricultural operations of a

26   monastery.  The monastery was not a § 501(d) organization; it had
     been granted a tax exemption under 26 U.S.C. § 501(c)(3).

ORDER - 13

1  rather than by educational considerations.  *Id.* at 849, 106 S.Ct.

2  1591.  "'Those companies willing to pay for advertising space got it;

3  others did not.'"  *Id.* (quoting *American College of Physicians v.*

4  *United States*, 3 Cl. Ct. 531, 534 (1983)).  The Supreme Court agreed

5  the advertising in question was not substantially related to the ACP's

6  educational purpose.  *Id.* at 849-150, 106 S.Ct. 1591.  Consequently,

7  it upheld the Claims Court's decision to deny a refund.

8        Unlike the American College of Physicians, the SHB is not a §

9  501(c)(3) organization.  It is a § 501(d) organization.  Thus, the SHB

10  does not have to worry about unrelated business taxable income:

11        [A § 501(d)] organization is granted its exemption not
         because of function, but because of form.  It is totally
12        unrestricted in function.  Indeed, § 501(d) specifically
         allows the organizations it exempts to engage in business
13        and thus compete with nonexempt entities.  The only
         requirements for the exemption are that there be a common
14        treasury, that the members of the organization include pro
         rata shares of organization income when reporting taxable
15        income and, implicitly, that the organization have a
         religious or apostolic character.  Once this requirement of
16        form is fulfilled, the exempt organization is unlimited as
17        to function.  It can farm, as the Milford Colony does, or
         engage in manufacturing, or any other business or
18        combination of businesses.  It is definitionally impossible
         for a § 501(d) organization to have unrelated trade or
19        business income.  If the organization had income that it
20        failed to allocate to its members, it would simply lose its
21        exemption altogether.

22

23  *Kleinsasser*, 707 F.2d at 1029.  Given the preceding observations, it

24  is clear the SHB cannot have unrelated business taxable income.  Mr.

25

26

ORDER - 14

Stahl's reliance upon the concept is misplaced.[3]  Since he has no other arguments to support his position, all that remains is to sum up.

    This section began with Mr. Stahl's contention the SHB may deduct from its gross income, as business expenses, the value of medical care and food it provided to him during tax years 1997, 1998, and 1999. The IRS denies the SHB may take § 162(a) deductions for the cost of medical care and meals it provided to Mr. Stahl.  The IRS argues § 162(a) is trumped by § 262(a), which prohibits deductions for personal, living, or family expenses.  It is unnecessary to determine whether the IRS is correct.  If a § 501(d) organization is entitled to take a § 162(a) deduction for food and medical care it provides to its members (and its far from clear whether such a deduction is ever available), the § 501(d) organization may take the deduction only if, at a minimum, the member is an employee of the organization.  Mr. Stahl is not an employee of the SHB.  Consequently, the United States is entitled to summary judgment with respect to Mr. Stahl's contention the SHB may deduct from its gross income the value of medical care and food it provided to him during tax years 1997, 1998, and 1999.

**IT IS HEREBY ORDERED:**

    1. The plaintiff's motion for summary judgment (**Ct. Rec. 15**) is **denied**.

    2. The defendant's motion for summary judgment (**Ct. Rec. 10**) is **granted**.

---

    [3]As a result, the Court need not consider the private letter ruling he cites.

ORDER - 15

3. The plaintiff's claims against the defendant are dismissed with prejudice.

**IT IS SO ORDERED.**   The District Court Executive is hereby directed to file this order, enter judgment accordingly, furnish copies to counsel, and close the case.

**DATED** this _____ day of November, 2009.

 

Fred Van Sickle
Senior United States District Judge

ORDER - 16